IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CICERO MAPLE, #11112025,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**PA MILLS,** )<br>)<br>**Defendant.** ) | <br><br><br><br>Case No. 3:15-cv-00341-SMY<br><br><br><br> |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Cicero Maple is currently incarcerated at the Greenville Federal Correctional Institution in Greenville, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Maple has filed a *Bivens* action pursuant to 42 U.S.C. § 1331. (*Id.* at 1 & 6.) Maple alleges that he was improperly treated for a lump on the back of his head by Physician's Assistant Mills, that Mills engaged in excessive force against Maple when she initially treated him, and that Mills failed to provide Maple with information concerning the procedure. (*Id.* at 6-8.) Maple seeks an unknown amount of compensatory damages and five million dollars in punitive damages. (*Id.* at 11.)

This matter is now before the Court for a preliminary review of Maple's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

According to Maple's complaint, on the "closing week" of November 2014, Maple went to sick call for a headache and a large lump on the back of his head. (*Id*. at 5.) He was seen by Mills, who evaluated the lump and informed Maple that it was Lipoma. (*Id*.) Mills allegedly told Maple that the lump would be "nothing to take out," and that he would incur "no scarring" because Mills would only make "a small incision that would not be noticeable." (*Id*.)

Later that day, Mills attempted an excision on Maple. (*Id*.) Mills started by injecting Maple four times near the lump, but "took no effort to shave the area where the incision would be made" or disinfect the area. (*Id*.) Mills then made an incision in Maple's scalp and, according to Maple, used her hands and instruments to "poke, squeeze, and cut some more" into the area and repeatedly "manipulate[]" the lump. (*Id*.) Maple claims he was in severe pain during the procedure. (*Id*.) After some time, Mills sutured the wound and gave Maple painkillers. (*Id*.) She told Maple that the mass was not Lipoma, that she was unable to remove it, and that Maple would have to wait for the incision to heal before Mills or anyone else could perform further treatment. (*Id*.) Mills' treatment notes from the procedure indicate that she was considering a follow-up surgical consultation related to Maple's cystic mass. (*Id*. at 10.) The next day, Maple returned to Health Services for follow up, but was told by Mills that nothing could be done at that time and that she would check up on him. (*Id*. at 5.)

Per Maple's complaint, in the three months since the original procedure and his follow up with Mills, no further "medical attention" has been provided. (*Id*. at 4.) Maple also claims that he is still in "terrible pain" and that the incision occasionally bleeds. (*Id*. at 5.) Aside from his original follow up with Mills, Maple says that he alerted another physician's assistant at the prison that he is still in pain, but was again told that nothing could be done. (*Id*. at 4-5.)

On March 30, 2015, Maple filed the instant *Bivens* action against Mills. (*Id*. at 1.)

**Discussion**

The Court begins with a preliminary issue, namely the exhaustion requirement for *Bivens* claims. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." There is no futility exception to this requirement: "if a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim," regardless of whether the prison's response would provide the prisoner with his desired relief. *Massey v. Helman*, 196 F.3d 727, 732-33 (7th Cir. 1999). However, a prisoner must only exhaust those remedies that are available to him – when officials "fail to respond to inmate grievances," the grievance process can become "unavailable." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

Maple seems to have some exhaustion problems: he states in his petition that there is a prisoner grievance procedure at his institution, that he presented the facts relating to his complaint to that institution, and that he is "currently exhausting administrative remedy procedures in order to receive medical attention for the issue at hand." (Doc. 1 at 4.) He further states that he has "filed and [is] still filing sick calls and grievances." (*Id.*) Finally, Maple states – in his request for relief – that he is not yet "requesting injunctive or declaratory relief" in this case as the "exhaustion requirement is currently being fulfilled, and plaintiff wishes to proceed with [a] civil action." (*Id.* at 11.) While these statements suggest that Maple has not satisfied the exhaustion requirement, his complaint is unclear as to whether certain claims may be exhausted and others unexhausted. Further, when referencing his grievances, Maple states that he has been

"waiting over three months with no medical attention being provided," and that "[n]othing has worked so far." (*Id*. at 4.) These statements might allege a "fail[ure] to respond to inmate grievances," which could render the grievance process "unavailable" for some or all of Maple's claims. *Lewis*, 300 F.3d at 833. Given that Maple's complaint is unclear concerning exhaustion, it would be premature for the Court to delve into exhaustion at this stage. *See Walker v. Thompson*, 288 F.3d 1005, 1005 (7th Cir. 2002) (court should not dismiss *sua sponte* for failure to exhaust unless the failure is "apparent from the complaint itself" and "unmistakable").

With this preliminary matter out of the way, the Court will turn to the substance of Maple's complaint. Liberally construed, Maple's complaint alleges that Mills was deliberately indifferent to his medical needs at two points: first when she performed the procedure to attempt to remove the cystic mass, and second when she failed to provide follow-up treatment. In addition, Maple claims that Mills engaged in excessive force against him during the attempted excision. Finally, Maple alleges that Mills violated his Fourteenth Amendment right to receive medical information prior to treatment, as she did not provide information about the surgical procedure before attempting to excise the cystic mass in his head.

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Maple's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** Mills was deliberately indifferent to Maple's medical needs when she performed the procedure on him, in violation of the Eighth Amendment.

**COUNT 2:** Mills was deliberately indifferent to Maple's medical needs when she failed to provide follow-up care, in violation of the Eighth Amendment.

**COUNT 3:**  Mills engaged in excessive force against Maple when she performed the procedure on him, in violation of the Eighth Amendment.

**COUNT 4:**  Mills failed to provide medical information to Maple prior to performing the procedure on him, in violation of the Fourteenth Amendment.

The Court will begin with Maple's claim that Mills violated the Eighth Amendment when she performed the surgical procedure on him (**Count 1**). To put forth a viable medical claim, Maple must allege that Mills was "deliberately indifferent to his serious medical needs." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). This claim involves a two-part inquiry: the plaintiff must first show that his condition "was objectively serious," and must then demonstrate that "state officials acted with deliberate indifference" to that condition. *Id.*

For screening purposes, Maple has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Maple's cyst arguably qualifies as a serious condition, which is sufficient for screening purposes.

While it is a closer question, Maple's complaint also alleges deliberate indifference by Mills related to the attempted excision, at least for purposes of screening review. To be sure, "medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). In this vein,

allegations from a prisoner claiming that he is generally dissatisfied with his treatment or that he disagrees with the physician concerning proper treatment do not rise to the level of deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 591-92 (7th Cir. 1996). That said, deliberate indifference can be inferred if a professional's decision represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment," *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996), as it would if the treatment decision was "so far out of bounds that it was blatantly inappropriate or not even based on medical judgment," *King v. Kramer*, 680 F.3d 1013, 1019 (7th Cir. 2012). Here, Maple alleges that Mills' decision to attempt surgery on the mass herself – rather than obtain a surgical referral or attempt less invasive treatment – went far beyond the bounds of acceptable practice. This is enough to put forth an arguable claim, so **Count 1** will proceed past preliminary review.

Concerning Maple's claim that Mills has failed to provide follow-up care concerning his cyst (**Count 2**), this claim also passes preliminary review. As relevant here, a delay in treatment can constitute deliberate indifference if the delay lengthened the prisoner's suffering and medical staff knew of the need for follow-up care. *See*, *e.g.*, *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."); *McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010) (error to dismiss complaint at screening when prisoner alleged that personnel knew of need for follow-up care yet forced prisoner to "wait three months" for that care). In this case, Maple alleges that, after the surgery, Mills informed him that he had to wait until the incision healed before follow up could be performed, and that she would "check up on [him]." (Doc. 1 at 5.) Mills' treatment notes from

the surgery also indicate that a follow-up "surgical consult for removal" would be considered. (*Id.* at 10.) Since his surgery, Maple claims that his pain has been "getting worse," yet he still has received no further "medical attention." (*Id*. at 4-5.) These allegations put forth an arguable claim of deliberate indifference in failing to provide follow-up care, so **Count 2** may proceed.

Next, Maple claims that Mills engaged in excessive force against him, also in violation of the Eighth Amendment (**Count 3**). To put forth an excessive force claim, a prisoner must allege that an assault occurred and that it was "carried out maliciously and sadistically, rather than as part of a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010). This inquiry involves an objective component, which looks at whether defendant's conduct exceeded the "contemporary bounds of decency," as well as a subjective component, which looks to defendant's intent and whether he "acted wantonly and with a sufficiently culpable state of mind." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994). Here, Maple alleges that Mills treated him as a "[laboratory] rat," that she "poke[d], squeeze[d], and cut" into his head following the initial incision, and that he was in "[excruciating] pain" during and after the procedure. (*Id.* at 5 & 8.) Construing Maple's complaint liberally, he could be alleging that the means employed during the surgical procedure were cruel, and that is enough to bring an arguable excessive force claim. *See*, *e.g*., *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (excessive force present when official uses "more force than is necessary," resulting in "gratuitous pain or injury"); *Henderson v. Belfueil*, 197 F. App'x 470, 473 (7th Cir. 2006) (noting that excessive force claim could exist if "the means employed" during a medical procedure "were gratuitously cruel"). As such, **Count 3** will proceed through screening.

Finally, Maple claims that he was not provided with information about the medical procedure before it occurred, an action that violated his due process rights (**Count 4**). Some

circuits have recognized an independent Fourteenth Amendment claim for a failure to provide information to a prisoner prior to treatment.  *E.g.*, *Pabon v. Wright*, 459 F.3d 241, 249-50 (2d Cir. 2006); *Benson v. Terhune*, 304 F.3d 874, 884-85 (9th Cir. 2002); *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990).  The Seventh Circuit has not yet decided whether to recognize such a claim, instead applying the elements of the claim – as laid out by other circuits – to affirm a district court's grant of summary judgment in favor of medical staff.  *Cox v. Brubaker*, 558 F. App'x 677, 679 (7th Cir. 2014).  That said, the Seventh Circuit has previously suggested, in the context of an Eighth Amendment claim only, that it has "adopted a general rule that is consistent with these circuits."  *Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364, 367 (7th Cir. 2013).  Given the current legal landscape, the Court will assume the existence of a Fourteenth Amendment right in this case for the purpose of preliminary screening only.

"To assert a claim for a violation of [the] due process right to adequate information, an inmate must allege" that "government officials failed to provide him with [adequate] information," that "this failure caused him to undergo medical treatment that he would have refused had he been so informed," and that the "officials' failure was undertaken with deliberate indifference," as it would if medical staff "withheld information from [the prisoner] for the purpose of requiring [the prisoner] to accept [treatment]."  *Alston v. Bendheim*, 672 F. Supp. 2d 378, 384 (S.D.N.Y. 2009) (applying the elements from the Second Circuit's *Pabon* decision). Here, Maple only alleges a lack of information, stating that it "would not be possible to have informed consent" when the information was provided five days after the procedure.  (Doc. 1 at 8.)  He does not allege that this lack of information led him to undergo treatment that he would have refused, nor does he claim that Mills failed to fill him in on the risks in an effort to induce him to undergo treatment.  Accordingly, Maple's due process claim concerning medical

information (**Count 4**) must be dismissed without prejudice. *See Alston*, 672 F. Supp. 2d at 384-85 (dismissing claim because prisoner did not allege that doctor "withheld information from him for the purpose of requiring [the prisoner] to accept" treatment); *see also O'Neil v. United States*, No. 5:07-cv-00358, 2008 WL 906470, at *7 (S.D. W. Va. Mar. 31, 2008) (dismissing medical information claim at screening because prisoner did not "allege that any defendant acted with the intent to induce him to undergo treatment that he otherwise might have declined").

One closing note regarding an individual not named in Maple's caption: in his narrative, Maple claimed that he reported his ongoing issues with pain to Schneider, another physician's assistant, who told Maple that she "could do nothing about" his issues. (Doc. 1 at 5.) The Court does not construe Maple's complaint as raising a follow-up care claim against Schneider, as she is not named in the caption, is not named in the list of defendants, and is not mentioned in the memorandum of law. *See* FED. R. CIV. P. 10 (title of the complaint must "name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (for an individual to be considered a party he must be "specif[ied]" in "the caption"). If Maple wishes to bring a follow-up care claim against Schneider, he will need to amend his complaint consistent with Federal Rule of Civil Procedure 15. Rule 15 permits amendment once "as a matter of course" within "21 days after serving it" or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." The Court expresses no opinion as to the merits of such a claim.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1**, **COUNT 2**, and **COUNT 3** shall **PROCEED** against Defendant **MILLS**.

**IT IS FURTHER ORDERED** that **COUNT 4** is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Service of Process at Government Expense (Doc. 3) is **GRANTED**. Service shall be ordered as indicated below.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendant **MILLS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the federal rules.

**IT IS FURTHER ORDERED** that, if the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the

complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **Magistrate Judge Philip M. Frazier** for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Recruitment of Counsel (Doc. 2) is **REFERRED** to **Magistrate Judge Philip M. Frazier** for consideration.

Further, this entire matter is hereby **REFERRED** to **Magistrate Judge Philip M. Frazier** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 21, 2015**

**s/ STACI M. YANDLE**
**Judge Staci M. Yandle**
**United States District Judge**
